UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| RECYCLING SOLUTIONS TECHNOLOGY, LLC, et al., | ) ) ) | Civil Action No. 10-55-ART |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| DAVID E. ROSENBERG, et al., | ) ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Beauty may be in the eye of the beholder, but summary judgment requires something a bit more concrete. The parties in this case, looking at the same evidence, see very different things. One of the defendants, David Rosenberg, believes the evidence indisputably establishes that he is not liable to the plaintiffs. The plaintiffs, however, believe that the exact same evidence indisputably establishes that Rosenberg is liable. Each side has moved for partial summary judgment against the other. They are both wrong. A reasonable jury could return a verdict for either party. The cross-motions for summary judgment, R. 43, 44, are therefore denied.

## BACKGROUND

Michael Branham had his eye on a coal company, DFM Coal. But coal companies are not cheap. The purchase price was $20,000,000. Like most people, Branham did not have that kind of money laying around. So he tried to secure a loan through Quest Corporation, a company that specializes in arranging such transactions. Quest, of course, would not loan

$20,000,000 to just anybody. It required due diligence, and it also required Branham to obtain a Bank Instrument Letter of Credit for the full face value of the loan as secondary collateral. To this end, Branham agreed to place $720,000 (approximately 3.5% of the total value of the loan) in escrow while Quest assured itself that Branham was creditworthy. Branham borrowed the $720,000 from the plaintiffs, Recycling Solutions Technology ("RST") and Frank May, who were represented in the transaction by attorney D.B. Kazee. The parties executed an escrow agreement under which Branham (acting through his alter-ego Push Power Fuels, LLC) agreed to deposit $720,000 with attorney David Rosenberg, acting as escrowee. R. 28, Attach. 4. Rosenberg was to hold the funds while Quest conducted its due diligence. If Quest was satisfied and wished to proceed with the loan, it was to issue a commitment letter. Upon receipt of the commitment letter, the escrow agreement obligated Rosenberg to immediately disburse $700,000 of the escrow funds "for the benefit of the Borrower to procure the Bank Instrument." *Id*. Rosenberg was to keep $20,000 as his fee. If Quest decided that it did not wish to proceed with the loan, the agreement obligated Rosenberg to return the entire $720,000 within five days, less a minimal bank service charge. The escrow agreement further provided that, "upon making the payments" described in the agreement, Rosenberg would "be released and discharged from all duties and obligations hereunder and neither party shall have any claim against [him] thereafter."

The first part of the transaction went off without a hitch. Kazee wired $720,000 to Rosenberg, Quest conducted its due diligence, decided to go forward with the loan, and issued a commitment letter. Two days later, Rosenberg wired $700,000 out of the escrow account. Then things went south. Quest subsequently learned about a pending bankruptcy involving

2

Branham and Push Power Fuels, which caused the lender it had arranged to provide financing to back out of the transaction. Quest tried to locate another lender, but before it could do so DFM Coal was sold to somebody else and Branham backed out of the transaction.

But where was the $720,000? The plaintiffs—who loaned Branham the money—filed this action in Kentucky state court against Quest and Rosenberg to get their money back. R. 1, Attach. 1. They made three separate claims against Rosenberg for conversion, negligence, and breach of the escrow agreement. *Id.* ¶¶ 26-47. The defendants removed the case to this Court on May 11, 2010. R. 1. After some procedural wrangling over a motion to remand and a motion to substitute the proper plaintiff, the parties filed cross-motions for partial summary judgment concerning the liability of Rosenberg. R. 43, 44.

**ANALYSIS**

Here is what we know: Rosenberg received $720,000 from the plaintiffs via a wire transfer on August 19, 2009. R. 27, Attach. 1. After successfully completing due diligence, Quest issued a commitment letter on August 26, 2009, indicating that it would proceed with the loan. R. 24, Attach. 2. Under the escrow agreement, the commitment letter obligated Rosenberg to "immediately disburse[]" $700,000 of the escrow funds "for the benefit of the Borrower to procure the Bank Instrument." Rosenberg was to keep the remaining $20,000 as his fee. Bank records show that, on August 28, 2009, Rosenberg wired $100,000 to Quest Capitol Finance and $600,000 to Commercial Escrow Services, both of which had addresses in California. R. 31, Attach. 8. In a deposition, Rosenberg testified that he transferred the funds to these parties and

in these amounts at the direction of Quest. R. 33, Attach. 4 at 4-5. But no bank instrument was ever procured, and the loan did not go forward. *Id.* at 6.

From these undisputed facts, the parties draw wildly different conclusions. Rosenberg contends that he is entitled to summary judgment because, by disbursing the funds, he fulfilled all of his obligations under the escrow agreement. And, because the escrow agreement "release[s] and discharge[s]" Rosenberg from all "duties," "obligations," and "claim[s]" upon making the required payments, Rosenberg further argues that the plaintiff's claims against him for negligence and conversion are also barred. The plaintiffs see things quite differently. They contend that summary judgment *against* Rosenberg is proper because Rosenberg indisputably breached the escrow agreement. Under the agreement, Rosenberg had a duty to either disburse the escrow funds "for the benefit of the Borrower to procure the Bank Instrument" or to promptly return all of the funds if the loan did not go forward. Because no one ever secured a bank instrument, and Rosenberg never returned the escrow funds, the plaintiffs believe that Rosenberg clearly breached the escrow agreement and therefore is liable as a matter of law.

Summary judgment is only appropriate if "there is no genuine dispute as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Put differently, a court may only grant summary judgment if no "reasonable jury could return a verdict for the nonmoving party." *Abdulnour v. Campbell Soup Supply Co., LLC,* 502 F.3d 496, 501 (6th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In this case, the evidence could plausibly support a jury verdict for either Rosenberg or the plaintiffs. Summary judgment is therefore precluded for either side.

A reasonable jury could certainly conclude that Rosenberg breached the escrow agreement. Within days of receiving the commitment letter, Rosenberg disbursed $700,000 of the escrow funds—$100,000 to Quest and $600,000 to Commercial Escrow Services. But the escrow agreement required more than a simple disbursement. Rosenberg had to disburse the escrow funds "for the benefit of the Borrower to procure the Bank Instrument." R. 28, Attach. 4. Rosenberg has not produced sufficient evidence to conclusively establish that he satisfied this contractual obligation. Rosenberg testified in his deposition that he disbursed the funds at the direction of Quest. R. 33, Attach. 4 at 5-6. But who was Commercial Escrow Services, and why did Quest direct Rosenberg to send them $600,000? There is no evidence in the record explaining why Quest directed Rosenberg to disburse the funds as he did or how Quest and Commercial Escrow Services were supposed to use the funds to procure a bank instrument. Nor does the Court have any idea what kind of an institution Commercial Escrow Services is. For all the Court knows, Commercial Escrow Services could have been a funnel to an offshore financial haven in the Cayman Islands. Viewing this scant evidence in the light most favorable to the plaintiffs, a reasonable jury could return a verdict in their favor and find that Rosenberg did not fulfill his obligation under the escrow agreement. Summary judgment in favor of Rosenberg is therefore inappropriate. *See Abdulnour,* 502 F.3d at 501. Because it is not clear whether Rosenberg disbursed the funds in conformity with the escrow agreement, it is also not clear whether Rosenberg may benefit from the escrow agreement's provision releasing him from all duties, obligations, and claims. Therefore, the plaintiffs' claims against Rosenberg for

conversion and negligence, in addition to their claims based on breach of the escrow agreement, both remain.

But just because a reasonable jury could return a verdict in the plaintiffs' favor against Rosenberg does not mean that the plaintiffs are themselves entitled to summary judgment against him. Based on the evidence in the record, a reasonable jury could also find in Rosenberg's favor. The plaintiffs point to Rosenberg's and Quest's undisputed failure to ultimately procure a bank instrument and argue that this establishes a breach by Rosenberg. But this argument overlooks the actual obligation that the escrow agreement placed on Rosenberg. The agreement only obligated Rosenberg to *disburse* the escrow funds "for the benefit of the Borrower to procure the Bank Instrument," not to actually *obtain* the bank instrument himself. R. 28, Attach. 4. If Rosenberg disbursed the funds to other entities who were to procure the bank instrument, Rosenberg would have fulfilled his obligation even if subsequent events ultimately derailed those entities' efforts to secure the bank instrument. A reasonable jury could conclude that, by wiring $100,000 to Quest and $600,000 to Commercial Escrow Services, Rosenberg was disbursing the funds in an effort to obtain a bank instrument, as required by the escrow agreement. As explained above, the jury would not be *required* to reach this conclusion, but it is certainly a permissible one. Accordingly, summary judgment against Rosenberg is also improper. *See Abdulnour,* 502 F.3d at 501.

## CONCLUSION

Just as one man's trash may be another man's treasure, one party's clear evidence of contractual liability may be another party's clear evidence of a satisfied contractual obligation.

In this case, the evidence could plausibly support a jury verdict in favor of either party. Accordingly, it is **ORDERED** that the parties' cross-motions for summary judgment, R. 43, 44, are **DENIED**.

This the 4th day of May, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge